# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**MARSHALL HAGINS,**

    **Plaintiff,**

**v.**                                                   **Case No.  8:06-cv-224-T-30EAJ**

**LOCKHEED MARTIN CORPORATION,**

    **Defendant.**

_____/

## <u>ORDER</u>

THIS CAUSE comes before the Court upon Defendant Lockheed Martin Corporation's Motion for Summary Judgment (Dkt. 34), and Plaintiff Marshall Hagins' Motion for the Court not to Grant Defendant Lockheed Martin Corporation Summary Judgment (Dkt. 37).  The Court, having considered the motion, response, memoranda, and being otherwise advised in the premises, determines that Defendant's Motion should be granted and Plaintiff's Motion should be denied.

### Background.[1]

On or about September 28, 1998, Defendant Lockheed Martin Corporation (**"Lockheed Martin"**) hired Plaintiff Marshall Hagins (**"Hagins"**) as a print operator in its Administrative Services department at its facility in Lakeland, Florida.  The print operator position is classified as "nonexempt salary grade 2."  Hagins was initially hired by Brenda

---

[1] The Court notes that, other than to allege Lockheed Martin operates on the "Old South method" and the "Good Old Boy System," Hagins has not disputed the accuracy of the Statement of Facts presented by Lockheed Martin.

Dorn (**"Dorn"**), the Computer Operations Supervisor assigned to the Administrative Services department. Hagins currently works in the mailroom of the Administrative Services department, where he his supervised by Robert Bowman (**"Bowman"**).[2]

Prior to his employment with Lockheed Martin, Hagins obtained an A.A. degree in Liberal Arts and an A.S. degree in Automotive Technology from Polk Community College in Winter Haven, Florida. Hagins was previously employed as a Financial Liaison with Peace River Center, where he (i) calculated and collected rent, (ii) assisted patients in applying for food stamps, disability and veterans benefits, and (iii) reconciled petty cash up to $250.00. Hagins also attended the University of Phoenix for a period of time to obtain a degree in accounting. His classes were paid for by Lockheed Martin. He claims he has about thirty six hours remaining to complete his degree.

The record reflects a history of conflict between Hagins and Dorn. Hagins claims that Dorn had mood swings and that she would shout and yell at him. When asked at his deposition whether Dorn ever said or did anything to him based on his race, Hagins replied saying "[H]er reaction, body language; nothing verbal, but body language and her action and tone." (Hagins dep., p. 33, ll. 11-14). Hagins has not alleged that Dorn made any verbal remarks or comments to him based on his race. Notably, Hagins went on to testify that "[E]veryone at Lockheed knew Brenda,"and that a number of other employees of different

---

[2] As Facilities Manager of Administrative Services, Robert Bowman also supervises Brenda Dorn and all employees assigned to the print room and the scanning department.

races, including Caucasians, experienced the same mood swings and conduct from Dorn. Id. at pages 34-35.

Due in part to conflict with Dorn, and due in part to alleged dissatisfaction with his job performance, Hagins was rotated through a number of different positions within the Administrative Services department.  In February of 2002, per Hagins' request, Bowman rotated Hagins from the print room to the mailroom where he prepared travel accounting documents for scanning.  Bowman relocated Hagins to the scanning room in July of 2002, where he reported directly to Dorn.[3]  While working in the scanning room, Hagins did not meet the minimum requirements of the position and was placed on a Performance Improvement Plan (**"PIP"**).[4]  Bowman claims that while on the PIP, Hagins improved his performance yet still failed to meet the minimum requirements.[5]  Instead of terminating Hagins, Dorn and Bowman claim they decided to transfer Hagins back to the mailroom to prepare accounts payable documents.  When Hagins still failed to meet the minimum

---

[3] During his deposition, Hagins claimed Bowman moved him from the mailroom to the scanning department without explanation.  Hagins claims he later found out Bowman moved him because other employees were complaining that he "burped a lot."  Hagins did not deny this allegation, claiming that "I have problems with acid reflux, so I burped a lot, but I would say excuse me."  (Hagins dep., p. 53).

[4] Minimal requirements included scanning at least 1,000 documents per hour, having less than a 2% error rate, picking up and prepping documents, and cleaning the scanner daily.

[5] Hagins claims he did not meet the minimum requirements because Bowman and Dorn ignored his complaints that his scanner did not work properly.

requirements of this position, Bowman claims he limited his job duties to those he know he could perform successfully.[6]

During the course of his employment, Hagins has applied for numerous promotions with Lockheed Martin.  Each of these applications was denied.  Hagins claims Lockheed Martin has denied his applications because he is African American, and that Caucasian employees with inferior qualifications have been awarded the promotions he applied for.  As a result, Hagins filed the instant lawsuit and has proceeded *pro se*.

Pursuant to his Amended Complaint (Dkt. 10), Hagins claims Lockheed Martin discriminated against him with respect to three promotional decisions.  As a result of the alleged racial discrimination, Hagins claims he is entitled to punitive and compensatory damages under 42 U.S.C. § 1981 in the amount of seven hundred million dollars. Alternatively, Hagins asserts a claim for punitive and compensatory damages pursuant to Title VII of the Civil Rights Act of 1964 in the amount of three hundred thousand dollars.[7] The three promotional decisions which are the subject of Hagins' Amended Complaint are as follows:

---

[6] While Hagins claims Bowman treated him differently because of his race, he stated during his deposition that he could not recall a specific instance.  He states that "once Bob made a statement that I would never get a position upstairs because of my burping, but I can't really say that's based on race." (Hagins dep., p. 65, ll. 18-20).

[7] The Court notes that Hagins has provided no evidence or support regarding the amount of his alleged damages.

**I. Accounting Assistant Sr. Spec. (Job Requisition no. 458554)**

In February of 2005, Hagins applied for an Accounting Assistant Sr. Specialist position in the Payroll Accounting Department.  The position was a non-exempt salary grade 4 position, and the hiring manager was Charles Brown (**"Brown"**).  The education required for the position was a "[h]igh school diploma, or equivalent experience/combined education, with additional specialized training in specific aspects of job functions and/or demonstrated ability to perform assigned tasks and five years experience."  (Brown Affidavit at ¶ 5 and Ex. A.).

Brown awarded the position to Michele LeClerc (**"LeClerc"**), a Caucasian female who had been working at Lockheed Martin as a contract worker in the tax payroll area for approximately one year.[8]  According to Brown, she was already performing the job duties required by the position at a level equivalent to that of a Level 4 employee.  Brown claims he personally observed LeClerc performing these duties and formed the opinion to hire her based on his observations.

Brown claims he did not hire Hagins because he honestly believed he was not qualified for the position as a salary grade 2 print operator.  He claims he believed that Hagins did not have experience with the computation of numbers or any basic accounting skills needed to be successful at the position.  Although Brown was not aware that Hagins

---

[8] Prior to starting at Lockheed Martin, LeClerc worked for three years in contract office positions, which included experience in accounting and collections.  Her resume indicates she also worked for seven years as a Senor Claims Officer for Zurich Insurance Australia.

was going to school for accounting, he claims this knowledge would not have affected his decision.

During his deposition, Hagins admitted he had no accounting experience other than collecting rents and reconciling petty cash at the Peace River Center.  Furthermore, he admitted he did not have the following qualifications or experiences which were required for the position: (i) one year of experience handling large company payroll tax return reporting, (ii) filing state and local payroll withholding tax returns, (iii) filing state unemployment returns, (iv) monitoring weekly state and local payroll withholding tax payments, (v) maintenance of state and local payroll tax compliance file, (vi) researching payroll tax compliance issues, (vii) providing billing support for FICA match, FUTA and SUTA, (viii) interfacing with other payroll accounting teams on reconciliation issues, (ix) general accounting support tasks, (x) verifying accuracy of invoices and other documents, (xi) updating journals, ledgers, and other records, and (xii) compiling data and preparing reports.[9]

Brown claims that Hagins' race was never a consideration in his decision to select LeClerc over Hagins.  He also claims that he never discussed Hagins with Bowman or Dorn and that he did not review his performance evaluations.  During his deposition, Hagins claimed that he did not know Brown well enough to say whether he discriminated against

---

[9] The general and specific job descriptions for the position were attached to Brown's Affidavit as Exhibit A.  While Hagins admits in his deposition that he did not have experience performing the various tasks required by the position, he claims he could be trained.  Hagins contends that LeClerc and the other employees who were awarded positions were trained for the positions, and that he wasn't afforded the same opportunity.  Hagins admits, however, that he has never asked for training or for a job shadowing opportunity in accounting.

him based on his race. (Hagins dep., p. 102, ll. 16-22).  Hagins has not claimed that Brown made any racial remarks or took any specific action that would indicate racial discrimination. When questioned about Brown during his deposition, Hagins simply responded, "show me a Caucasian that has applied for as many positions as I have for seven years and has not received one position, not one."  Id.

## II.  Accounting Assistant Spec. (Job Requisition no. 458648).

In February of 2005, Hagins applied for an Accounting Assistant Specialist position in the Pooled Accounts Payable Department.  The position was a salary grade 3 position, and Diana Arthur was the hiring manager.  The position required a high school diploma, with "additional specialized training in specific aspects of job functions and/or demonstrated ability to perform assigned tasks, and 3 years of experience."  Arthur selected Charlsie Richardson for the position, whom Arthur claims had already been working in the position as a contract worker.  Arthur claims that, based on her observations, Richardson had the experience and skills needed to perform the tasks required by the position.  Arthur did not discuss Hagins with Bowman or Dorn and did not review his performance evaluations.

Arthur did not select Hagins for the job because she felt he had insufficient computer skills and lacked knowledge and experience in accounts payable.  Hagins admitted during his deposition that he did not satisfy the following requirements for the position: (i) processing high exposure invoices including zero dollar, ILP invoices, and rematches from liaisons, (ii) general accounting support tasks in an accounting office (other than reconciling petty cash at Peace River Center and reconciling his own checkbook), (iii) verifying accuracy

of invoices and other accounting documents, (iv) updating journals, ledgers, and other records, and (v) reconciling bank and financial statements/reports.[10]  Hagins claims he was more qualified than Richardson because she did not have a college degree.  Furthermore, during his deposition, he claims that "all she did was picked up AP and brought it down to me to prep, which I felt I could do that; key in invoices, I felt I could do that."[11]

Arthur claims that race was not a consideration in her decision to select Richardson over Hagins.  Hagins stated during his deposition that because he never had any direct dealing with her, Arthur never did anything that would make him feel as though she discriminated against him because of his race.  (Hagins dep., p. 99, ll. 17-21).

### III.  Payroll Assistant Specialist Position (Job Requisition no. 479971).

In March of 2004, Hagins applied for a Payroll Assistant Specialist position in the Payroll Processing Department.  The position was a salary grade 3 position, and Laurie Sheppard (**"Sheppard"**) was the hiring manager.  Sheppard selected Brenda Boyles (**"Boyles"**) for the position, who was already working for Lockheed part time as a level 3 accounting specialist on the Shared Service's cash management team on payroll accounts.  Prior to that, Boyles was an assistant administrator and payroll administrator for Lockheed

---

[10] The general and specific job descriptions for the position were attached to Arthur's Affidavit as Exhibit A.

[11] The Court notes that Richardson's resume described her prior position as an Invoice Analyst as follows: "[T]he mail comes up to the mail bins and I take the mail by each side and go through the sites to take out staples, copies, statements . . . I keep an updated spreadsheet of incoming 'On Call' invoices.  I pick up work for my team and another team to take down stairs to go to scanning."

Martin Shared Services.  Based on Boyle's experience and skills, Sheppard claims she believed she was the best candidate for the position.

Sheppard claims she did not select Hagins because she did not believe he was qualified for the position.  She claims that Hagins' automotive technology degree was of minimal value and knew that he did not have any experience in payroll.  At his deposition, Hagins admitted that he did not have payroll experience.  However, Hagins contended that his A.A. degree in accounting satisfied the two years of accounting, finance, or payroll education and/or related experience required for the position.  With respect to his A.A. degree, Hagins stated "[W]ell, that's my A.A. degree, accounting.  I mean, well, it's liberal arts, but the only thing that kept it from being an accounting position is the math."  (Hagins dep., p. 112, ll. 18-20).  Hagins admitted his resume did not reflect his AA degree, minus the math, was in accounting.  He also admitted that he did not satisfy the following requirements of the position: (i) performs a variety of statistical tasks and clerical duties required to prepare payroll data for the computer input and process exception item, and (ii) responds to inquiries regarding salary actions and changes in compensation.[12]

Sheppard claims that race was not a consideration in her selection of Boyles over Hagins.  Hagins has admitted that Sheppard never did or said anything to him that would make him feel as though she would take action against him because of his race.  (Hagins

---

[12] The standard job description for the Payroll Assistant Spec. position were attached as Exhibit A to Sheppard's Affidavit.

dep., p 113, ll. 19-23).   As with the other hiring managers, Sheppard claims she did not discuss her decision with Bowman or Born and did not review his performance evaluations.

### Discussion.

### I.  Summary Judgment Standard.

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)(emphasis in original).  The substantive law applicable to the claimed causes of action will identify which facts are material.  Id.  Throughout this analysis, the judge must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in her favor.  Id. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial.  Celotex, 477 U.S. at 324.   The evidence must be significantly probative to support the claims.  Anderson,  477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir.1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

## II.  Legal Analysis.

As stated by the Eleventh Circuit in Denney v. City of Albany, 247 F.3d 1172, 1183 (11th Cir. 2001), "Under the rubric of McDonnell Douglas Corp. V. Green, 411 U.S. 792 (1973)[13], [t]o establish a prima facie case of discriminatory failure to promote, a plaintiff must prove: (1) that he is a member of a protected class; (2) that he was qualified for and applied for the promotion; (3) that he was rejected; and (4) that other equally or less qualified employees who were not members of the protected class were promoted." The Eleventh Circuit has further held that "[S]ummary judgment is appropriate against a plaintiff who fails to demonstrate that he was qualified to perform the position for which he was rejected." Turlington v. Atlanta Gas Light Co., 135 F.3d 1428, 1433 (11th Cir. 1998).

---

[13]Additional internal citation omitted.

While Hagins has established that he is a member of a protected class and that he was rejected from the three promotions, he has failed to establish that he was qualified for the promotions for which he applied.   By his own admissions, Hagins lacked the skills and experience required for each of the positions.   Although he claims in his Motion that Lockheed Martin "trains Caucasian employees with less qualifications before placing the job open in order for the Caucasian employee to receive the job," he has admitted that he has not taken advantage of the training opportunities afforded to him by the company.  In fact, he admits that Lockheed Martin was paying for him to obtain a degree in accounting from the University of Phoenix.

Furthermore, in order for Hagins to establish a prima facie case of discrimination, he must show that other equally or less qualified non-African American employees were promoted in his place.  <u>Jerome v. Marriot Residence Inn</u>, 211 Fed.Appx. 844, 847 (11th Cir. 2006).   Hagins has failed to do so.   The record reflects that each of the three candidates selected over Hagins had more relevant work experience and/or job related skills.  Moreover, pursuant to <u>Celotex</u>, Hagins has not gone beyond the pleadings through the use of affidavits, depositions, answers to interrogatories or admissions on file to designate specific facts showing there is a genuine issue for trial.   Accordingly, Hagins has failed to establish a prima facie case of discrimination.  Lockheed Martin is entitled to summary judgment as a matter of law.

It is therefore ORDERED AND ADJUDGED that:

1.     Defendant Lockheed Martin Corporation's Motion for Summary Judgment (Dkt. 34) is **GRANTED**.

2.     Plaintiff Marshall Hagins' Motion for the Court not to Grant Defendant Lockheed Martin Corporation Summary Judgment (Dkt. 37) is **DENIED**.

3.     All pending motions are denied as moot.

4.     The Clerk is directed to close this case.

**DONE** and **ORDERED** in Tampa, Florida on August 29, 2007.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2006\06-cv-224.msj.frm